## Bowling v. Webster.

(Decided June 19, 1925.)

### Appeal from Marion Circuit Court.

1. Evidence—Statement of Husband Not in Wife's Presence, Not Binding on Her.—In action on note for land, signed by purchaser and wife, his statement that she was furnishing most of purchase price, which was not made in her presence, held not binding on her.

2. Husband and Wife—Wife, Who Was to Become Partner in Stock of Goods, Held Not Surety on Notes in Payment.—Where sale of store and stock of goods constituted single transaction, and wife was to become partner in stock of goods, she was principal and not surety for husband in executing purchase money notes, notwithstanding she may not have known she was a grantee of the real estate.

3. Sales—Purchaser Held Entitled to Credit for Damaged Merchandise and for Morphine, which it was Unlawful to Sell.—Purchaser of stock of merchandise under agreement that any goods in damaged condition which purchaser did not desire to take were to remain property of seller, held entitled to credit for damaged tobacco included in stock, and also to credit for morphine, which it was unlawful to sell, and which purchaser had to destroy.

HUGH C. COOPER for appellant.

H. S. McELROY for appellee.

Opinion of the Court by Judge Sampson—Affirming in part and reversing in part.

Appellant, Mary B. Bowling, is the wife of A. C. Bowling. On September 2, 1921, A. C. Bowling entered into a written contract with appellee, Webster, for the purchase of certain real property including a store building at Raywick, Marion county, at the price of $5,700.00, and certain other fixtures and furnishings at the price of $250.00, and a general stock of merchandise at the invoice price, a total of something more than $11,900.00. In the contract it is provided "in making said invoice if any goods are discovered in a damaged condition and second party does not desire to take same, they are to remain the property of the first party." This contract was signed in duplicate, Webster retaining a copy and Bowling a copy. The stock of goods invoiced $5,591.75; thereupon Bowling paid Webster $5,000.00 in cash and executed to him notes due in one, two, three, four, five, six and seven years, for the balance. Each note contains this provision: "This note is the ——— of several deferred payments on the purchase price for certain real estate and personal property located in Raywick, Marion county, Ky., and if any of said payments or the interest thereon are not paid when due, all of same are to become due and collectible at the option of the holder thereof and for which deferred payments a lien is retained in the deed." They bear date of September 23, 1921, and are signed by A. C. Bowling and Company, by A. C. Bowling, A. C. Bowling and Mary B. Bowling.

When the first note of $1,000.00 became due Bowling paid it off; he also paid the interest on the other notes. The deed for the land was not made until September 23rd, 1921, the date of the notes, although the title bond bears date September 2nd. The land was conveyed to A. C. Bowling and wife, Mary B. Bowling, but the title bond or contract of purchase made before and signed by Webster and wife on the one side, and A. C. Bowling on the other, obligated the Websters to convey the property to A. C. Bowling only. Mrs. Bowling was not a party to that writing. She resided at McWhorter, Laurel county, and she did not go to Raywick until about the time the invoice of the store was completed and the deed and notes were prepared.

When the second note became due the Bowlings declined to pay, and this action was commenced by Web-

ster against A. C. Bowling and Mary Bowling to collect the notes and to enforce their lien against the lands. A. C. Bowling filed answer and counterclaim in which he averred in substance that the Websters had failed to deliver the full possession of the property in accordance with the original contract and that he was damaged in that respect several hundred dollars; and further that Webster had charged him up with goods which were damaged and which he declined to take at the time they were invoiced, and sought credit on this account, and also for certain morphine and drugs included by Webster in the invoice, which Bowling later had to destroy because unlawful to have in possession. He also asserted other claims which it is unnecessary here to set out.

Mrs. Bowling filed answer in which she denied she had purchased the land or any interest in it, and denied her liability on the notes, averring she was merely surety of her husband, and, as a married woman, was not bound on the notes. It is further averred: "Further answering the defendant, Mary B. Bowling, says she entered into an agreement with her husband whereby she agreed to and became his surety on the notes sued on and in that way and no other did she sign them; . . . The defendant, Mary B. Bowling, says that shortly after her husband had purchased said property from the plaintiff she entered into an agreement with her husband whereby she was to and did become a partner with her husband in the mercantile business, and in that way to become joint and equal owner in the dry goods and groceries and other mercantile stock situated in the store building purchased by her said husband from the plaintiff, and because of this agreement this defendant agreed to and did become surety for her husband as aforesaid on said notes, but this defendant was not in any way interested in the said real estate nor was she purchaser or owner of any portion of said real estate."

The averments of the answer, except those admitting her partnership and suretyship, were put in issue by reply. The court entered judgment against both A. C. Bowling and Mary B. Bowling for $5,991.75, with interest thereon from September 23, 1922, until paid, subject to a credit of $50.00 as of September 23, 1921; $250.00 of January 1, 1922, and $24.05 as of January 5, 1924. From this judgment Mary B. Bowling alone, prosecutes an appeal.

Appellant, Mary B. Bowling, contends that the trial court erred to her prejudice in holding her liable on the notes in the absence of competent evidence to show that she purchased an interest in the real property and agreed for that property to be conveyed to her in part. She says she was not a party to the contract and did not know that the deed from Webster and wife was to A. C. Bowling and herself, jointly, but believed the deed was to her husband only; that she did not see the deed or know whom were the grantees; that her husband did not tell her of the fact she was a grantee in the deed, and she did not learn it from any other source until the suit was commenced; that she signed the notes as surety for her husband only and not otherwise; that she furnished about $1,500.00 of the purchase money which was included by her husband in the initial payment upon the property.

The sale of the real property, store house, fixtures and stock of goods was but a single transaction. · It was so treated by all the parties concerned. The total price was but little less than $12,000.00, of which $5,000.00 was paid in cash and the balance evidenced by installment notes. There is no direct evidence that the deed was ever presented to Mrs. Bowling. It was delivered to A. C. Bowling and he kept it in his possession and it was not recorded. She says she never saw the deed. There is some evidence and many circumstances tending to prove that Mrs. Bowling had knowledge of the whole transaction and was aware that she was one of the grantees in the deed. Her answer avers she entered into an agreement of partnership with her husband to handle the stock of goods. This, it appears, was before the execution of the notes sued on and before the deed was made and delivered. The evidence shows that the deed was made to the Bowlings jointly at the suggestion of the husband who said his wife was furnishing most of the purchase price. As this statement was not made in her presence it can not be considered as binding upon her; but the averment in her verified answer to the effect she entered into an arrangement with her husband by which she was to become his partner in the stock of goods, is sufficient to bind her, for the merchandise and lands were sold by the Websters to the Bowlings in a single deal and transaction. Admittedly she received a part of the consideration for the notes, for she says she was part owner of the goods. She was, therefore, a princi-

pal in the note, and not merely a surety. Under such circumstances she is not entitled to be relieved of liability on the notes whether she knew she was a grantee in the deed or not. Although she may not have intended to become a part owner of the real estate she did purpose to become a joint owner of the merchandise, and signed the notes with her husband after she had agreed with him, as she says, to become his partner and joint owner of the merchandise. Certainly the notes were given in large part for the price of the merchandise. The $5,000.00 paid in cash was applied upon the price of both the real property and the merchandise.

We conclude, therefore, that the trial court did not err in holding appellant, Mary B. Bowling, liable upon the notes. We think, however, the trial court should have given the Bowlings credit for the damaged tobacco, a part of the stock of merchandise, and also credit for the items of morphine which it was unlawful for the appellee, Webster, to sell and which the Bowlings afterwards had to destroy. These items only amounted to about $150.00. On a return of the case the court will ascertain the facts and modify the judgment as indicated. In all other respects the judgment is affirmed.

Judgment affirmed in part and reversed in part.